# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BMO HARRIS BANK N.A., | Case No.: 1:16-cv-01776 - LJO - JLT |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND DENYING WITHOUT PREJUDICE THE REQUEST FOR FEES AND COSTS |
| v. | |
| APS TRANS INC., et al., | |
| Defendants. | (Doc. 10) |

BMO Harris Bank, N.A., asserts that Harbhaja Sanghera and APS Trans Inc. failed to make payments owed under three loan and security agreements and are liable for breaches of the contracts. Defendants failed to respond to the allegations in the complaint, and Plaintiff now seeks default judgment against Defendants. (Doc. 10)

For the following reasons, the Court recommends Plaintiff's motion for default judgment be **GRANTED**, and the request for fees and costs be **DENIED** without prejudice.[1]

**I.     Procedural History**

Plaintiff initiated this action by filing a complaint against the defendants on November 22, 2016. (Doc. 1)  The Court issued summons to APS Trans Inc. and Harbhajan Sanhera on the same

---

[1] Because the Court finds the motion may be determined without oral argument, the hearing set on May 19, 2017 is **VACATED**.

date. (Doc. 2) The defendants were served with the Summons and Complaint on December 16, 2016. (Docs. 4, 5) However, the defendants failed to respond within the time frame prescribed by the Federal Rules of Civil Procedure. Upon application of Plaintiff, default was entered against APS Trans Inc. and Harbhajan Sanghera on February 24, 2017. (Docs. 7, 8) Plaintiff filed the motion for default judgment now pending before the Court on April 19, 2017. (Doc. 10)

## II. Legal Standards Governing Entry of Default Judgment

The Federal Rules of Civil Procedure govern the entry of default judgment. After default is entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

## III. Plaintiff's Factual Allegations[2]

Plaintiff alleges that Sanghera and GE Capital Commercial Inc. entered into Loan and Security Agreement No. 7953911-001 (the "First Agreement") on April 2, 2015, and GE Capital "agreed to finance Sanghera's purchase of the equipment" for his business, APS Trans Inc. (Doc. 1 at 2, ¶¶ 4, 11) Sanghera agreed to pay $89,285.40, including interest, under the First Agreement. (*Id.* ¶ 11) As collateral for the First Agreement, Sanghera offered a first-priority security interest in a refrigerated van trailer, VIN 1UYVS2530GU485906 . (*Id.* at 3, ¶ 15) GE Capital perfected its security interest by recording a lien on the certificate of title. (*Id.*, ¶ 16)

On November 11, 2015, APS Trans Inc. and Transportation Truck and Trailer Solutions, LLC ("TTTS") entered into Loan Security Agreement No. 7970736-002 (the "Second Agreement). (Doc. 1 at 2, ¶ 12) Under the terms of the Second Agreement, APS Trans Inc. agreed to pay $93,443.04,

---

[2] The factual assertions of Plaintiff are taken as true because default has been entered against the defendants. *See Pope*, 323 U.S. at 22.

2

including interest. (*Id.* at 3, ¶ 12) "Sanghera guaranteed the full and timely performance of [APS Trans Inc.] under all of its present and future liabilities to, among others, TTTS and its successors and assigns." (*Id.* at 3, ¶ 17) As collateral for the Second Agreement, TTTS received a first-priority security interest in a refrigerated van trailer, VIN 1UYVS2530GU571913. (*Id.*, ¶ 15) TTTS perfected its security interest by recording a lien on the certificate of title. (*Id.*, ¶ 16)

On November 20, 2015, APS Trans Inc. and TTTS entered into Loan and Security Agreement 7959431-002 (the "Third Agreement"). (Doc. 1 at 3, ¶ 13) Under the Third Agreement, APS Trans Inc. agreed to pay $ 199,051.92, including interest. (*Id.*) Again, Sanghera guaranteed the full and timely performance of APS Trans Inc. under the Third Agreement. (*Id.*, ¶ 17) As collateral for the Third Agreement, APS Trans Inc. offered a first-priority security interest in a Volvo tractor, VIN 4V4NC9EJXGN950662. (*Id.*, ¶ 15) TTTS perfected its security interest for the Third Agreement by recording a lien on the certificate of title. (*Id.*, ¶ 16)

On December 1, 2015, GE Capital and TTTS "transferred and assigned to Plaintiff all of their respective rights, titles, and interests in and to the accounts with Defendants, including, without limitation, the Agreements, the Guaranty, and the security interests in the Collateral." (Doc. 1 at 4, ¶ 18) Accordingly, Plaintiff is the successor-in-interest for the First, Second, and Third Agreements.

In July and August 2016, Sanghera and APS Trans Inc. failed to make payments due under the agreements. (Doc. 1 at 4, ¶ 21) Specifically, "Sanghera failed to make the August 2, 2016 payment due under the First Agreement, and both APS and Sanghera failed to make the August 1, 2016 payment due under the Second Agreement and the July 5, 2016 payment due under the Third Agreement." (*Id.*) Pursuant to the terms of the agreements, the entire amounts due were accelerated after Sanghera and APS Trans Inc. defaulted. (*Id.* at 4 ¶ 22; *see also id.* 14-15 ¶ 4.1, 20-21 ¶ 4.1, 26-27 ¶ 4.1) "[T]he principal amount due under the First Agreement is $57,450.73 as of August 2, 2016[;] the principal amount due under the Second Agreement is $67,035.92 as of August 1, 2016[;] and the principal amount due under the Third Agreement is $144,686.90 as of July 5, 2016." (*Id.* at 4, ¶ 22)

In addition, "Defendants are obligated to pay interest on all unpaid amounts at the default interest rate of eighteen percent (18%) per annum or the maximum rate not prohibited by applicable law." (Doc. 1 at 4, ¶ 23) Calculated with a "360-day year of twelve 30-day months," the interest owed

accrued at the rate of $134.68 per diem.[3] (Doc. 1 at 5; *see also* Doc. 1 at 13, 19, 25) Further, under the terms of the agreements, Defendants are obligated to pay late fees, including $669.60 under the First Agreement, $454.23 under the Second Agreement, and $1,105.84 under the Third Agreement. (*Id.* at 5, ¶ 26) Finally, Defendants are obligated to pay attorneys' fees and costs for the enforcement of the agreements, such as this action. (*Id.*, ¶ 28)

Plaintiff contends Defendants are liable for breaches of each of the agreements and failing to pay the amounts due. (*See* Doc. 1 at 9-10) According to Plaintiff, "Calculated as of October 11, 2016, the amount due and owing under the Agreements, not including attorneys' fees and expenses or costs of collection, is an amount not less than $283,074.36." (*Id.* at 5, ¶ 29)

## IV. Discussion and Analysis

Entry of default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### A. Prejudice to Plaintiff

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and potential prejudice to the plaintiff weighs in favor of granting a default judgment. *See Pepsico, Inc.*, 238 F. Supp. 2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. *Id.*; *Moroccanoil, Inc. v. Allstate Beauty Prods.*, 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012). Therefore, the Court finds Plaintiff would be prejudiced if default judgment is not granted.

---

[3] This amount includes $28.73 for the First Agreement, $33.52 for the Second Agreement, and $72.43 for the Third Agreement. (Doc. 1 at 5, ¶ 24)

**B. Merits of Plaintiff's claims and the sufficiency of the complaint**

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together. *See Premier Pool Mgmt. Corp. v. Lusk*, 2012 U.S. Dist. LEXIS 63350, at *13 (E.D. Cal. May 4, 2012). The Ninth Circuit has indicated that, when combined, the factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175.

1. Breach of contract

To demonstrate a breach of contract, the plaintiff must prove the existence of a contract, breach, damages and that the plaintiff performed under the contract. *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011). In the complaint, Plaintiff establishes the existence of three loan and security agreements. (*See* Doc. 1 at 2, ¶ 11-13) In addition, "Plaintiff has performed its obligations under the Agreements." (*Id.* at 7, ¶ 47) Further, Plaintiff establishes that Sanghera has breached the First Agreement, and APS Trans Inc. breached the Second Agreement and Third Agreement by failing to make payments due in July and August 2016. (*Id.* at 4, ¶ 21) Finally, Plaintiff alleges the principal amount due under the First Agreement is $57,450.73; the principal amount due under the Second Agreement is $67,035.92; and the principal amount due under the Third Agreement is $144,686.90. (*Id.*, ¶ 22) Thus, Plaintiff has established the elements for breaches of the contracts by Sanghera and APS Trans Inc.

2. Breach of guaranty

To establish the breach of a guaranty, the plaintiff must show the same elements as with a breach of contract. *Oasis*, at 821. Plaintiff alleged that as to the Second and Third Agreements, "Sanghera guaranteed the full and timely performance" of [APS Trans Inc] under all of its present and future liabilities…" (Doc. 1 at 3, ¶ 17) Plaintiff attaches copies of each guaranty signed by Sanghera to the Complaint. (*Id.* at 38-39) Because Plaintiff alleges it performed under the agreements, but Defendants failed to make the repayments, Plaintiff has also demonstrated breaches of the guarantees.

**C. Sum of money at stake**

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of [a] [d]efendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Thus, the Court

must "assess whether the recovery sought is proportional to the harm caused by [a] defendant's conduct." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). "Default judgment is disfavored when a large sum of money is involved." *See Moore v. Cisneros*, 2012 U.S. Dist. LEXIS 177044, at *5 (E.D. Cal. Dec. 12, 2013).

Plaintiff seeks a judgment against Sanghera in the amount of $ 269,173.55, plus interest, which is accruing at a rate of $134.68 per day for the three agreements. (*See* Doc. 10 at 6) As a result the interest owed for the three agreements is $41,118.73 as of May 19, 2017. In addition, Plaintiff seeks a judgment against APS Trans Inc. in the amount of $211,722.82, the amount due under the Second and Third Agreements, plus interest. (*See id.*) The Court finds these amounts proportional to the harm caused by the defendants' conduct and, therefore, this factor does not weigh against entry of default judgment.

### D. Possibility of dispute concerning material facts

There is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, the defendants failed to appear. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *see also Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"). Therefore, this factor does not weigh against default judgment.

### E. Whether default was due to excusable neglect

Generally, the Court will consider whether a defendant's failure to answer is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Here, Defendants were served with the Summons and Complaint, as well as the motion for default judgment. (*See* Docs. 4, 5, 10) Given these facts, it is unlikely the failure to respond was the result of excusable neglect. *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion"). Accordingly, this factor does not weigh against default judgment.

///

### F. Policy disfavoring default judgment

Default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Here, however, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment because Defendants' failure to appear before the Court makes a decision on the merits impractical.

### G. Conclusion

Based upon the foregoing, the Court finds the *Eitel* factors weigh in favor of granting default judgment, and recommends the motion for default judgment be **GRANTED**.

## V. Fees and Costs Request

Under the Agreements, Defendants are required "to pay the attorneys' fees and costs incurred by Plaintiff in the enforcement of its rights thereunder." (Doc. 1 at 5, ¶ 28) Plaintiff seeks an award of $11,729.13 for fees and costs. (Doc. 10 at 6) Accordingly, the Court must determine whether the fees and costs sought by Plaintiff are reasonable.

In general, the Court determines a reasonable fee award "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *Florida v. Dunne*, 915 F.2d 542, 545 n. 3 (9th Cir. 1990) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

The Supreme Court explained that attorney fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 and n.11 (1984). In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Thus, when a case is filed in this Court, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate …." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011).

Here, Plaintiff's counsel seeks hourly rates ranging from $370 to $400 for the individuals who worked on this action including Aaron Chapin, Jonathan Doolittle, Sara B. Johansen, and Ariana

Goodell. (*See* Doc. 10-1 at 16) However, Plaintiff fails to provide any information concerning the years of experience each individual has in practicing law[4], and fails to present any evidence that the requested rates are aligned with those typically awarded in the Fresno Division of the Eastern District.[5] Without such information, the Court is unable to calculate a lodestar amount or determine the reasonableness of the fees requested. Accordingly, it is recommended that Plaintiff's request for fees and costs be **DENIED** without prejudice.

## VI. Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. *See Aldabe*, 616 F.2d at 1092. Based upon the foregoing, the Court **RECOMMENDS**:

1. Plaintiff's application for default judgment (Doc. 10) be **GRANTED**;

2. Judgment be entered in favor of Plaintiff BMO Harris Bank N.A. and against Defendant Harbhajan Sanghera in the amount of $**269,173.55**, plus interest in the amount of $**41,118.73** as of May 19, 2017, with additional interest accruing at the daily rate of $134.78 until the entire amount is paid;

3. Judgment be entered in favor of Plaintiff BMO Harris Bank N.A. and against Defendants APS Trans Inc. in the amount of $**211,722.82**, plus interest in the amount of $**32,787.03** as of May 19, 2017, with additional interest accruing at the daily rate of $105.95;

4. Plaintiff's request for attorney's fees and costs be **DENIED** without prejudice;

---

[4] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). In addition, the Court "may take judicial notice of the State Bar of California's website regarding attorneys' dates of admission to the Bar." *Davis v. Hollins Law*, 25 F.Supp.3d 1292, 1298 n. 5 (2014).
The Court attempted to locate information subject to judicial notice regarding the admission dates of Aaron Chapin, Jonathan Doolittle, Sara B. Johansen, and Ariana Goodell. Although the Court was able to find admission dates for Mr. Doolittle and Ms. Johansen, similar information was not available on the website of the California State Bar for Mr. Chapin or Ms. Goodell. The Court declines to speculate as to whether Mr. Chapin and Ms. Goodell are members of the Bar, or identify hourly rates without any information regarding the experience of counsel.

[5] Notably, this Court has reviewed the billing rates for the Fresno Division and concluded that "hourly rates generally accepted in the Fresno Division for competent experienced attorneys [are] between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Silvester v. Harris*, 2014 U.S. Dist. LEXIS 174366, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 2014). For attorneys with "less than ten years of experience ... the accepted range is between $175 and $300 per hour." *Id.* (citations omitted). Though counsel may be able to demonstrate that higher rates should be awarded, they have failed to even justify the typical rates awarded in this District.

8

5. If Plaintiff still wishes to seek an award of attorneys' fees, that Plaintiff be **DIRECTED** to file a motion for attorney fees and costs, with proper evidentiary support, within fourteen days of the date of service of any order addressing these Findings and Recommendations.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **May 16, 2017**            **/s/ Jennifer L. Thurston**
                                                    UNITED STATES MAGISTRATE JUDGE